HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: OCEAN ALEXANDER
INVESTMENTS, INC.

         Debtor,

TERRENCE BENISH, PLAN
ADMINISTRATOR FOR OCEANS
ALEXANDER INVESTMENTS, INC.,

         Plaintiff/Appellee,

   v.

YALE STREET MARINA, INC.,

         Defendant/Appellant.

CASE NO. C12-1075 RAJ

[BANKR. NO. 11-10628 KAO]

[ADV. PROC. NO. 11-2142 KAO]

ORDER

## INTRODUCTION

This matter comes before the court on defendant Yale Street Marina, Inc.'s ("YSM" or "Appellant") appeal from the Judgment entered by the bankruptcy court. Dkt. # 8. YSM contends that the bankruptcy court erred in finding that the Plan Administrator was entitled to waive the attorney-client privilege on behalf of the Debtor, Ocean Alexander Investments, Inc. ("OAII"), and in awarding Washington State Department of Natural Resources lease number 11096 to OAII. *Id.* at 3–4. Appellee Terrence D. Benish, Plan Administrator ("Appellee" or "Mr. Benish"), disputes

ORDER- 1

Appellant's contentions and asks the court to affirm the bankruptcy court's Judgment. Dkt. # 10.

At the outset, the court notes Appellant's near-complete failure to comply with this District's local rules regarding the designation of the record in bankruptcy appeals. Pursuant to Local Rules W.D. Wash. Bankr. R. ("Local Bankr. R.") 8006-1, appellants must designate portions of the record for this court to review, *and* must "serve and file excerpts of the record with the district court clerk as appendices to their briefs." The appendix must include: (1) the items listed in Fed. R. Bankr. P. 8009(b)(1) through (8),[1] (2) "the transcript or portion thereof as necessary for adequate review," and (3) any other items that the appellant designates. Local Bankr. R. 8006-1(a)–(c). Here, Appellant designated numerous documents from the bankruptcy court, but did not provide any of those documents to this court. *See* Dkt. ## 7 (Amended Designation of Record on Appeal); 12 (Second Amended Designation of Record on Appeal). Nor did Appellant provide the requisite documents listed in Fed. R. Bankr. P. 8009(b), or any transcripts of the proceedings in the trial court. Instead, Appellant cites directly to the bankruptcy court docket. *See, e.g.*, Dkt. # 8 at 5–6. Portions of Appellant's brief contain no citations whatsoever. *See, e.g.*, *id.* at 4–5; Fed. R. Bankr. P. 8010(a)(1)(D), (E).[2] The court will not further delay issuing a ruling in this case by ordering Appellant to re-submit adequate documents, and has instead reviewed the records in the bankruptcy court docket designated by Appellant. The court notes that it expects future filings to comport with all applicable rules, both federal and local. Failure to submit compliant documents in the future will result in sanctions.

---

[1] These items are: (1) the complaint and answer or other equivalent pleadings; (2) any pretrial order; (3) the judgment, order, or decree from which the appeal is taken; (4) any other orders relevant to the appeal; (5) the opinion, findings of fact, or conclusions of law filed or delivered orally by the court and citations of the opinion if published; (6) any motion and response on which the court rendered decision; (7) the notice of appeal; and (8) the relevant entries in the bankruptcy docket. Fed. R. Bankr. P. 8009(b).

[2] Portions of Appellee's brief also lack adequate citations. *See, e.g.*, Dkt. # 10 at 5–6.

Having reviewed the papers submitted and the record herein, the court AFFIRMS the Judgment of the bankruptcy court.

## JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction over appeals from the bankruptcy court pursuant to Fed. R. Bankr. P. 8001 and 28 U.S.C. § 158(a)(1). The court reviews factual findings for clear error, and reviews legal questions de novo. Fed. R. Bankr. P. 8013; *Beaupied v. Chang (In re Chang)*, 163 F.3d 1138, 1140 (9th Cir. 1998).

## FACTUAL BACKGROUND[3]

In 1944, the Society of St. Vincent de Paul ("SVDP") acquired a parcel of property on the shore of Lake Union. Dkt. # 10-4 (Joint Pretrial Order[4]) at 4–5. In 1990, OAII's predecessor-in-interest entered into a 99-year lease with SVDP, for a seven-lot portion of the property that includes uplands and shorelands. Dkt. # 10-6 (Findings of Fact and Conclusions of Law) at 7. A structure sits on the uplands portion of the property, and a marina extends over the shorelands and out onto submerged land owned by the State of Washington. Dkt. # 10-4 at 5. The State's land is administered by the Department of Natural Resources ("DNR"). *Id.* Ten slips in the marina are over the DNR land, and thus these slips are subject to a lease from DNR ("DNR lease"). *Id.* at 5. The Corporation of the Catholic Archdiocese of Seattle ("CCAS") had owned the DNR lease since 1977. *Id.*

In 1992, the 99-year lease with SVDP was assigned to OAII, at which time OAII began negotiations with DNR for formal assignment of the DNR lease. Dkt. ## 10-4 at 5;

---

[3] The bankruptcy court issued findings of fact and conclusions of law on May 22, 2012. Dkt. # 10-6. Appellant does not allege any error with regard to the findings of fact, and this court defers to the bankruptcy court's findings. Fed. R. Bankr. P. 8013. The court summarizes only the relevant facts for purposes of this appeal.

[4] The bankruptcy court incorporated the stipulated facts in the parties' joint pretrial order into its findings of fact. Dkt. # 10-6 at 5. That court also incorporated its oral findings of fact made at a May 4, 2012, hearing. *Id.* However, Appellant did not request transcription of that hearing, and thus it is not available for this court's review. *See* Dkt. # 6 (Statement of Arrangements).

10-6 at 8.  The sticking point was a hazardous-waste indemnity to which DNR wanted OAII to agree, and which CCAS required as a condition precedent to CCAS assigning its rights under the lease to OAII.  Dkt. ## 10-6 at 8; 10-15 (Decl. of Patrick W. Crowley) ¶ 8.  For the next two years, OAII attempted to negotiate changes to the hazardous-waste indemnity.  Dkt. # 10-6 at 8.  It was unsuccessful.  *Id.*  Finally, in February 1994, DNR told OAII that it would cancel the lease unless OAII accepted the indemnity.  *Id.*  Subsequently, one of OAII's attorneys called DNR to inform them that OAII would accept the lease assignment as proposed by DNR.  *Id.* at 9.  On April 13, 1994, the same attorney called DNR and stated that OAII would be changing its name to "Yale Street Marina, Inc.," and asked that YSM be shown as the assignee of the lease.  *Id.*  On April 26th, YSM was incorporated.  *Id.*

In August 1994, CCAS learned that YSM would be the assignee of the lease.  Dkt. # 10-15 ¶ 9.  CCAS was surprised, as they believed that OAII would be the assignee.  *Id.*  OAII's attorneys explained to CCAS that "YSM was a newly formed shell corporation controlled by OAII that would have no assets other than the Lease, and that YSM had been formed for the purpose of minimizing any risk to OAII and the Property from potential hazardous waste environmental claims asserted by DNR."  *Id.*

On May 18, 1995, DNR executed the lease with YSM, and it was renewed again in 2003.  Dkt. # 10-6 at 9.  The DNR lease required that YSM provide proof of certain insurance coverage, and since 2000 DNR received insurance certificates indicating that the insured and policy owner was "Ocean Alexander Investments Inc.," "Ocean Alexander Investments Inc. dba Yale Street Marina, Inc.," or "Ocean Alexander Investments Inc. dba Yale Street Landing."  *Id.* at 9–10.

Alexander Holdings, Inc. ("AHI") owns 100% of the shares of both OAII and YSM.  *Id.* at 5.  Prior to OAII's bankruptcy, Ching-Chen "Johnny" Cheuh controlled AHI, OAII, and YSM.  *Id.* at 4.

## PROCEDURAL HISTORY

OAII filed a chapter 11 bankruptcy petition on January 21, 2011. Dkt. # 10-6 at 5. In April of that year, OAII sought leave of the bankruptcy court to obtain an appraisal of its property. *Id.* at 2. An appraiser chosen by OAII submitted a valuation based on the entire property, including the 10 slips in the marina over the submerged DNR lease land, and the DNR lease itself. *Id.* at 11. A Disclosure Statement filed in connection with the Creditor's Reorganization Plan cited this appraisal, and "[t]he Debtor, YSM and their common corporate owner, knowing that the appraised value of the Property was based on the Debtor's ownership of the entire property and the DNR lease, did not object to the disclosure statement." *Id.* at 11. The court subsequently approved the Reorganization Plan and appointed Mr. Benish as Plan Administrator. *Id.* at 5.

Mr. Benish attempted to sell the property as described in the appraisal. *Id.* at 11. At that point, however, YSM objected and claimed that it, and not OAII, owned the DNR lease as well as the slips over the DNR lease land. *See* Dkt. ## 10-3 (Answer of YSM to Plan Administrator's Compl.); 10-6 at 11–12. Mr. Benish initiated an adversary proceeding, seeking declaratory and injunctive relief that OAII owned the entire marina and the DNR lease. Dkt. # 10-2 (Plan Administrator's Compl. for Declaratory and Injunctive Relief).

Mr. Benish served interrogatories and requests for production on YSM, requesting documents relating to OAII and YSM's various lease agreements, YSM's financial records, and both companies' corporate records. *See* Dkt. # 10-10 (Pl's Mot. to Compel Disc. Resps. from YSM) at 5–6. YSM refused to produce any documents, stating, *inter alia*, that they were protected by attorney-client privilege and the work product doctrine. *See id.* at 3. YSM did not provide a privilege log indicating which documents it believed were protected. Mr. Benish filed a motion to compel. Dkt. # 10-10. With regard to the requested documents relating to OAII, Mr. Benish argued that he, as Plan Administrator, had the authority to waive the attorney-client privilege. *Id.* at 7. In its response, YSM

contended that, although a *trustee* in a bankruptcy proceeding may waive the privilege, a plan administrator is not similarly situated and thus does not have the same authority. Dkt. # 10-11 (Def's Resp. to Pl.'s Mot. to Compel) at 4–5.

The bankruptcy court held a hearing on March 9, 2012. B. Dkt.[5] # 149 (Tr. of Proceedings, March 9, 2012). The court found that Mr. Benish, as Plan Adminstrator, held the privilege with regard to OAII. Dkt. # 10-8 at 3. However, because YSM had not provided a privilege log for the court to review, the court did not rule on which allegedly privileged documents must be produced. *See* B. Dkt. # 149 at 15:9–20; Dkt. # 10-8 at 3. The bankruptcy court ordered YSM to produce the documents Mr. Benish requested, or to provide a detailed privilege log with regard to the documents it believed were protected. Dkt. # 10-8 (Order Granting Pl.'s Mot. to Compel Disc.).

YSM produced a privilege log. However, the log included documents that had been created prior to YSM's incorporation in April 1994, and thus Mr. Benish argued that these documents inherently could not be subject to YSM's attorney-client privilege. Dkt. # 10-12 (Pl.'s Mot to Perpetuate Test., and Further Mot. to Compel) at 5–6. Another hearing was held. B. Dkt. # 150 (Tr. of Proceedings, March 23, 2012). At that hearing, Mr. Benish and the court sought to ascertain whose privilege YSM intended to assert, given that the privilege log included documents created prior to YSM formation. *Id.* at 12:15–24, 13:23–25. Counsel for YSM indicated that his client was Mr. Cheuh, the president of YSM and OAII. *Id.* at 14:1–3. Counsel stated, "I mean, the difficulty is that he is the president of both companies. So he holds the privilege." *Id.* at 14:1–3. He went on to state that "Mr. Cheuh has the authority to assert [the] privilege with regard to both Yale Street Marina and Oceans Alexander." *Id.* at 15:20–22.

---

[5] Where Appellant has designated bankruptcy court records, but has not provided them to this court, the court will cite directly to the docket in *Benish v. YSM (In re OAII)*, case no. 11-2142 KAO (Bankr. W.D. Wash). The court will use "B. Dkt." to refer to the docket in that case.

ORDER- 6

Mr. Benish pointed out, and the court agreed, that Mr. Cheuh was not the client in the case. *Id.* at 15:5–7. With regard to asserting the privilege on behalf of the entities involved in the litigation, the court reiterated that Mr. Benish, and not Mr. Cheuh, held the privilege for OAII. *Id.* at 16:3–5. The court also stated that "if . . . Yale Street Marina is going to refuse to produce documents based upon the assertion of [OAII's] privilege, then . . . I have to have some remedy for that." *Id.* at 16:10–14. The court ultimately found YSM in contempt for failing to produce documents or provide an adequate privilege log. Dkt. # 10-9 (Order On Pl.'s Mot. to Perpetuate Testimony, and Further Mot. to Compel) at 3. The court stated that YSM could purge the contempt by producing "all documents in YSM's possession, custody or control that pre-date April 18, 1994, and all documents in its possession which are claimed as privileged based on OAII's attorney-client or work-product privilege." *Id.* (emphasis in original).

YSM finally produced more documents. Among those documents was a memo dated March 9, 1994, from OAII's attorneys to OAII, recommending that OAII form a "shell corporation" to accept assignment of the DNR lease. B. Dkt. # 71-1 at 6 (Ex. 2 to Feinberg Decl. in Support of Pl.'s Mot. for Summ. J.). The memo stated that "[t]his way, if any environmental or other claims are pressed against the operator of the facility, only the assets of the new corporation will be 'at risk.'" *Id.* (emphasis in original). The memo suggested that the new company be called "Yale Street Marine Corp." *Id.* OAII responded to the attorneys on March 18th, instructing them to "please go ahead with" the suggestion to form a new "substitute company." B. Dkt. # 71-1 at 7 (Ex. 3 to Feinberg Decl. in Support of Pl.'s Mot. for Summ. J.).

The memo and response were exhibits to Mr. Benish's motion for summary judgment, in which he argued that the court should find that either a constructive trust or a resulting trust existed in favor of OAII. *See* B. Dkt. # 70 (Pl.'s Mot. for Summ. J. or Partial Summ. J.) at 4–5, 11–15. The court granted Mr. Benish's motion for summary judgment in part, finding that OAII was the owner of the 10 slips above the DNR land.

1  Dkt. # 10-7 (Order Granting Pls. Partial Summ. J.) at 3.  A trial was held to determine the
2  owner of the DNR lease.  *See id.* at 3.  At that trial, the memo and response were
3  admitted as plaintiff's exhibits 24 and 25, respectively.  *See* Dkt. # 10-4 at 14–15; B. Dkt.
4  # 151 (Tr. of Proceedings, May 10, 2012, AM Session) at 38:1–3, 38:17–21.  The court
5  ultimately ruled that YSM held the DNR lease in a constructive trust for the benefit of
6  OAII, and thus OAII was the owner of the interest in the lease.  Dkt. # 10-6 at 14, 16.
7       YSM appealed.  Dkt. # 8.  It contends that the trial court erred in finding that Mr.
8  Benish had the authority to waive the attorney-client privilege, and in awarding the lease
9  to OAII.  *Id.* at 3–4.

## ANALYSIS

1.  <u>Appellant Does Not have Standing to Assert OAII's Attorney-Client Privilege</u>

12  Appellant presents the first issue as: "[d]id the trial court err in awarding the
13  power to waive the attorney/client privilege to the Plan Administrator?"  Dkt. # 8 at 3.
14  Yet Appellant makes no argument with regard to its own privilege; rather, Appellant
15  refers only to that of OAII.  *See* Dkt. ## 8 at 5, 9, 10; 11 at 4, 5, 7.  Appellant contends
16  that it was prejudiced by the trial court's order allowing the Plan Administrator to waive
17  "OAII's Attorney/Client Privilege," and that the documents in question were subject to
18  "OAII's Privilege."  Dkt. ## 8 at 10; 11 at 4.  Yet Appellant—YSM—fails to explain
19  how it has standing to assert that corporation's privilege.
20  Ordinarily, "a litigant must assert his or her own legal rights and interests, and
21  cannot rest a claim to relief on the legal rights or interests of third parties."  *Powers v.*
22  *Ohio*, 499 U.S. 400, 410 (1991).  While there are some "limited exceptions" to this rule,
23  *see id.* at 410–11, Appellant makes no attempt to argue that one exists here.  Counsel for
24  YSM has repeatedly stressed that he does not represent OAII.  *See, e.g.*, Dkt. # 10-11 at 2
25  ("YSM's attorney does not work for OAI[I]."); B. Dkt. # 149 at 13:5 ("I do not work for
26  OAI[I]").  Although counsel referred to Mr. Cheuh, the president of both YSM and OAII,

as his "client" during the proceedings in the bankruptcy court, Mr. Cheuh is not a party to this litigation, nor has counsel appeared on behalf of Mr. Cheuh personally. *See, e.g.*, B. Dkt. # 8 (Notice of Appearance). Appellant has thus failed to demonstrate that it has standing to assert OAII's privilege. The court therefore does not reach the issue of whether a plan administrator may waive the attorney-client privilege.[6]

### 2. The Trial Court Did Not Err in Awarding the Lease to OAII

Appellant next contends that the trial court erred when it awarded the DNR lease to OAII. Dkt. # 8 at 12. However, it does not allege that the trial court made any erroneous findings of fact or conclusions of law (beyond the alleged erroneous ruling with regard to the attorney-client privilege) that led to this outcome. Rather, Appellant states that the court's decision was improperly influenced by the "shell company issue" revealed in the allegedly protected communications. *Id.* at 14. Appellant states that "[b]ut for the March 9, 2012 ruling that the Appellee had the power and authority to waive OAII's attorney/client privilege, the Appellee would not have prevailed at trial." *Id.* It thus appears that this "second" issue raised by Appellant is merely a further recitation of the harm it suffered due to the initial disclosure, which, for the reasons set forth above, the court finds Appellant has no standing to challenge.

YSM could have objected to the admissibility of the memo and response at trial if it believed they were unduly prejudicial.[7] *See* Fed. R. Evid. 403. However, although

---

[6] Even if this court were to find that the bankruptcy court erred in ordering YSM to produce the 1994 memo and response, such error would be harmless. The memo and response are cited only once in the bankruptcy court's Findings of Fact and Conclusions of Law, indicating that they were not central to that court's ultimate decision. *See* Dkt. # 10-6. Additionally, the bankruptcy court admitted testimony by Mr. Crowley, CCAS's attorney, who averred that OAII's attorneys told CCAS that YSM was formed as a shell corporation. Dkt. ## 10-6 at 4; 10-15 ¶ 9. Appellant does not challenge Mr. Crowley's testimony. Appellant has thus failed to carry its burden of demonstrating that prejudice resulted from the production of the contested documents.

[7] Appellee argues that an objection must be contemporaneous with the introduction of the evidence at trial in order to preserve the issue, and cites a Fifth Circuit case to support this proposition. Dkt. # 10 at 11 (citing *Swan v. Fla. Bureau of Ins. Co.*, 404 So.2d 802, 802 (5th Cir.

1  Appellant vociferously objected to the initial disclosure of the documents during the
2  discovery phase, it made no objection to their admissibility at the trial phase. B. Dkt.
3  # 151 at 38:1–3, 38:17–21. Appellant has thus failed to preserve that issue for appeal.
4  *See Palmerin v. City of Riverside*, 794 F.2d 1409, 1412–13 (9th Cir. 1986).

## CONCLUSION

For all the foregoing reasons, the court AFFIRMS the Judgment of the bankruptcy court. The Clerk of Court is directed to close this case.

Dated this 9th day of July, 2013.

*Richard A. Jones* (signature)

The Honorable Richard A. Jones
United States District Judge

---

1981)). The Ninth Circuit has expressly rejected the Fifth Circuit's approach. *Palmerin v. City of Riverside*, 794 F.2d 1409, 1412–13 (9th Cir. 1986). In this Circuit, a litigant may preserve an issue for appeal with either a motion *in limine* or a contemporaneous objection at trial. *See id.* at 1413 (holding that "where the substance of the objection has been thoroughly explored during the hearing on the motion *in limine*, and the trial court's ruling permitting introduction of evidence was explicit and definitive, no further action is required to preserve for appeal the issue of admissibility of that evidence"). In the instant case, however, Appellant did neither.